# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| KENT R. WARREN, | NO. C11-5241-TSZ-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Kent R. Warren appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be AFFIRMED.

## I. FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, plaintiff was a sixty-four year old man with at least a high school education. Administrative Record ("AR") at 26. His past work experience includes employment as a district sales manager in the heat and air conditioning division of Rheem Manufacturing. AR at 27-28, 116. Plaintiff was last gainfully employed in January 2002, when he was offered a voluntary separation. AR at 28, 116.

REPORT AND RECOMMENDATION - 1

On January 17, 2007, plaintiff filed an application for DIB, alleging an onset date of March 25, 2004. AR at 95-102. Plaintiff was insured through December 2007. AR at 26. Plaintiff asserts that he is disabled due to fatigue, diarrhea, and neck pain stemming from disc degeneration in his cervical spine. Dkt. 14 at 3. During the hearing, plaintiff testified that his neck problem was a problem long again and recently became a problem again, but his liver condition secondary to alcohol use is his most disabling medical condition. AR at 34.

The Commissioner denied plaintiff's claim initially and on reconsideration. AR at 45-51, 53-57. Plaintiff requested a hearing which took place on September 29, 2009. AR at 26-40. On October 28, 2009, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform his past relevant work as a district sales manager as generally performed in the national economy. AR at 22. The Appeals Council denied plaintiff's request for review on January 28, 2011, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g). AR at 1-6. On April 4, 2011, plaintiff timely filed the present action challenging the Commissioner's decision. Dkt. 3.

## II. JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id*. at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV. EVALUATING DISABILITY

As the claimant, Mr. Warren bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are

of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100. If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.     DECISION BELOW

On October 28, 2009, the ALJ issued a decision finding the following:

1. The claimant last met the insured status requirement of the Social Security Act on December 31, 2007.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 25, 2004 through his date last insured of December 31, 2007.

3. Through the date last insured, the claimant had the following severe impairments: liver disease secondary to alcohol use and degenerative disc disease.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b).

6. Through the date last insured, the claimant was capable of performing past residual work as a district sales manager as generally performed. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 25, 2004, the alleged onset date, through December 31, 2007, the date last insured.

AR at 19-22.

## VI. ISSUES ON APPEAL

The principal issues on appeal are:

1. Did the ALJ err in evaluating the medical opinion evidence?

2. Did the ALJ err in evaluating plaintiff's credibility?

Dkt. 14 at 1-2; Dkt. 17 at 2.

## VII. DISCUSSION

### A. The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

#### 1. *Standards for Reviewing Medical Evidence*

As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his conclusions. "He must set forth his own interpretations and explain why they,

rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

    *2. Rick Nicoski, M.D.*

On September 24, 2009, almost two years after plaintiff's date last insured, plaintiff's treating physician Dr. Nicoski opined that plaintiff's functional limitations met Listing 1.04 for disorders of the spine. AR at 186. Dr. Nicoski explained that plaintiff has "limited [range of motion] of neck, tenderness to the [right] of [vertebrae] C-5 [and] C-6. Patient has abnormal C-spine MRI." AR at 187. He opined that plaintiff also met Listing 5.05 for chronic liver

REPORT AND RECOMMENDATION - 7

disease, and that plaintiff could only stand or walk for thirty minutes at a time, sit for one hour at a time, and lift and carry a maximum of ten pounds occasionally. AR at 186, 188. He further asserted that plaintiff can never climb, balance, stoop, bend, kneel, crouch, crawl, read, or handle, but he can occasionally finger and feel. AR at 188. In addition, Dr. Nicoski stated that plaintiff's concentration, persistence or pace is markedly affected by his impairments, and that he would frequently miss work because he requires naps for two to three hours every day. AR at 189. Finally, Dr. Nicoski opined that plaintiff has been limited to this degree "since on or before 12/31/07." AR at 189.

The ALJ found that "[t]he limitations described by Dr. Nicoski far exceed the claimant's own alleged limitations. The claimant has reported he has no problems walking and can lift 30 pounds." AR at 22. In addition, the ALJ pointed out that plaintiff "works in his shop, performs household chores, shops, drives, and works on projects around the house. These activities are not consistent with the postural and manipulative limitations described by Dr. Nicoski. While the claimant may nap during the day, there is no evidence this is a medical necessity. The opinion of Dr. Nicoski is given little weight." AR at 22.

Plaintiff contends that "Dr. Nicoski's opportunity to review records from various specialists and objective tests, such as lab work and MRI's, afforded him a more global awareness of Plaintiff's condition than any other provider or examining physician." Dkt. 14 at 7. Plaintiff further contends that plaintiff's description of his activities was "not inconsistent with Dr. Nicoski's opinion when placed in the context of other evidence in the record . . . Plaintiff's function report documents that he was active in the morning then had little activity in the afternoon." *Id.* (citing AR at 149). Finally, plaintiff argues that "Dr. Nicoski's opinion that Plaintiff was limited in his ability to lift or carry on a sustained basis is consistent with Plaintiff's testimony that he could carry twenty-five pounds for fifty feet before exacerbating

REPORT AND RECOMMENDATION - 8

his neck symptoms. This opinion is also consistent with Plaintiff's report to Dr. Webster that he could lift thirty pounds." *Id*. at 8. However, "it is highly unlikely that Plaintiff would be able to maintain this level of activity on a regular and continuing basis." *Id.* The Commissioner responds that "the ALJ offered specific and legitimate, even clear and convincing, reasons for rejecting Dr. Nicoski's opinion." Dkt. 17 at 3.[2]

The ALJ offered several specific and legitimate reasons for rejecting Dr. Nicoski's opinion in this case. First, the record supports the ALJ's finding that the limitations assessed by Dr. Nicoski far exceed the claimant's own alleged limitations. AR at 22. For example, although Dr. Nicoski opined that plaintiff can only stand or walk for thirty minutes at a time and one hour out of an eight hour day, plaintiff reported to Dr. Webster that he has no problems walking. AR at 188, 332. Contrary to Dr. Nicoski's opinion that plaintiff can lift only ten pounds occasionally and could do no frequent lifting, plaintiff testified during the hearing that he could lift twenty-five pounds, and he told Dr. Webster that he could lift thirty pounds. AR at 36, 332. Similarly, although Dr. Dr. Nicoski indicated that plaintiff could do no handling or reaching, and could only occasionally finger and feel, plaintiff testified that he had no problems with the use of his hands. AR at 37, 188. Finally, plaintiff's reported activities, which include woodwork in his shop, some work on his five acres of land, household chores, driving, and house projects, are inconsistent with Dr. Nicoski's report. AR at 333. *See also Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (holding that an ALJ may discount a physician's opinion to the extent it conflicts with evidence of the

---

[2] Contrary to plaintiff's assertion that "no treating or examining physician . . . has offered an opinion about Plaintiff's functioning that contradicts Dr. Nicoski's opinion," as alleged by the Commissioner, Drs. Webster, Thuline, and Turner all opined that plaintiff is capable of at least a light level of exertion. AR at 171, 181, 335. Thus, the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Nicoski's opinion.

REPORT AND RECOMMENDATION - 9

claimant's daily activities). As the ALJ's reasons for rejecting Dr. Nicoski's opinion are specific and legitimate and supported by substantial evidence, the ALJ did not err.

        3.      *Kim Webster, M.D.*

Dr. Webster performed a consultative examination of plaintiff on July 13, 2007. AR at 332-35. Dr. Webster opined that plaintiff's "exhaustion [was] likely secondary to alcoholic cirrhosis." AR at 335. Dr. Webster also diagnosed "neck pain with a normal neuromuscular examination," and diarrhea. AR at 335. Dr. Webster assessed no limitations in plaintiff's ability to lift and carry, sit, stand, walk, or perform postural or manipulative functions. Specifically, Dr. Webster opined that "certainly based on the examination there is no evidence of workplace environmental limitations." AR at 335.

The ALJ summarized Dr. Webster's findings based upon the July 2007 consultative evaluation, including Dr. Webster's opinion that plaintiff "had no restrictions on standing, walking or sitting. There were no lifting or carrying restrictions and no postural or manipulative restrictions." AR at 21. The ALJ found that "the opinion of Dr. Webster is generally consistent with the treatment record and is given significant weight. However, in light of the claimant's degenerative disc disease and liver disease, the undersigned finds he is able to lift only 20 pounds occasionally and 10 pounds frequently." AR at 21.

Plaintiff contends that the ALJ erred by affording Dr. Webster's opinion significant weight, because "it was based on incomplete information, did not address all of Plaintiff's symptoms, and was contradicted by the opinions of the State Agency reviewing physicians and the ALJ's own findings." Dkt. 14 at 8-9. Plaintiff asserts that "Dr. Webster reviewed 'just a few chart notes' in preparation for her evaluation of Plaintiff. This limited review did not give her a proper basis for her examination or for interpreting Plaintiff's subjective statements to her." *Id.* at 9. As evidence of this, plaintiff points out that "Dr. Webster was unaware of the

REPORT AND RECOMMENDATION - 10

severity of Plaintiff's cervical degenerative disc disease, including multi-level stenosis, spinal cord compression, and moderate to severe disc degeneration. Dr. Webster described Plaintiff's cervical problem as neck pain with a constant low level of discomfort and occasional hits of intolerability." *Id.* As a result, plaintiff contends that Dr. Webster's evaluation of Plaintiff's functioning is unreliable and should not have been given greater weight than Dr. Nicoski's opinion. *Id.*

The Commissioner responds that "Dr. Webster gathered significant objective medical evidence when conducting her physical examination of Plaintiff, and was aware of Plaintiff's three chief complaints: neck pain, exhaustion, and diarrhea . . . [and] therefore, had sufficient information to provide an opinion regarding Plaintiff's functional limitations, even if her review of Plaintiff's records included 'just a few chart notes.'" Dkt. 17 at 6 (citing AR at 332). Moreover, the Commissioner argues that it is "the ALJ's purview to evaluate conflicts in the medical record when formulating a claimant's residual functional capacity." *Id.* The Commissioner acknowledges that "when an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Id.* (citing *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007)). In this case, however, the Commissioner points out that "Dr. Webster relied on her own thorough physical evaluation of Plaintiff in assessing Plaintiff's functional limitations, and the record contains no evidence Dr. Nicowski ever performed such an evaluation . . . *Orn* does not preclude relying on Dr. Webster's opinion, based on an independent physical evaluation, where Dr. Nicowski's opinion was properly rejected." *Id.* (citing AR at 269-88, 318, 324, 327-28).

The plaintiff replies that Dr. Webster's one-time contact with plaintiff did not constitute a basis for giving more weight to her opinion than to Plaintiff's long-term treating physician.

REPORT AND RECOMMENDATION - 11

1  Dkt. 18 at 2 (citing SSR 96-2p).  Specifically, plaintiff argues that "Dr. Webster did not even have the benefit of the 'same clinical findings' that Dr. Nicoski had reviewed in addition to his own examinations of Plaintiff," and therefore Dr. Webster's opinion could not constitute substantial evidence under *Orn*.  *Id.* at 3.

In *Orn*, the Ninth Circuit held that "when an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence' . . . If the ALJ wishes to disregard the opinion of a treating physician, he or she must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Orn*, 495 F.3d at 631-32.  By contrast, "when an examining physician provides 'independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence.  Independent clinical findings can be either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence . . . or (2) findings based on objective medical tests that the treating physician has not herself considered." *Id.* at 632 (internal citations omitted).

As noted above, the ALJ provided specific and legitimate reasons for rejecting the opinion of Dr. Nicoski's opinion in this case.  Under *Orn*, and the other applicable authority, this was sufficient to reject Dr. Nicoski's findings.  Thus, the ALJ did not err by affording Dr. Webster's opinion greater weight than Dr. Nicoski's opinion in this case.  Moreover, as argued by the Commissioner, Dr. Webster performed her own objective medical tests during her consultative examination, and primarily based her opinion regarding plaintiff's limitations upon these independent clinical findings.  AR at 332-35.  The ALJ deemed Dr. Webster's findings "generally consistent" with the treatment record, but ultimately found plaintiff more limited by the claimant's degenerative disc disease and liver disease.  As a result, the ALJ

REPORT AND RECOMMENDATION - 12

found plaintiff limited to lifting "only 20 pounds occasionally and 10 pounds frequently." AR at 21.

The ALJ did not err in evaluating Dr. Webster's opinion. The role of this Court is limited. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). While it is perhaps possible to construe the medical evidence as urged by the plaintiff, it is not possible to conclude that plaintiff's interpretation is the only rational interpretation.

*4. Dale Thuline, M.D. and Guthrie Turner, M.D.*

On April 18, 2007, Dr. Turner opined that plaintiff "is capable of light work activity on a consistent basis." AR at 181. Dr. Turner reviewed plaintiff's medical records, and diagnosed plaintiff with alcoholic cirrhosis and degenerative disc disease in his neck. AR at 174. Dr. Turner found that plaintiff's alcoholic cirrhosis is stable, and plaintiff "is able to perform his personal care needs with no problems, do minor repairs and upkeep around the house, drive, work on little projects in his workshop and walk 1/4 mile. [Claimant]'s allegations of total disability is not consistent with the objective findings." AR at 181. Similarly, Dr. Thuline "reviewed all of the evidence in the file" and affirmed Dr. Turner's April 18, 2007 assessment, finding that plaintiff was capable of light work. AR at 171.

The ALJ noted that "[t]he State agency consultants opine that the claimant is capable of light exertion work." AR at 22. Because the ALJ found that "their opinion is consistent with the treatment record," the ALJ afforded their opinions "significant weight." AR at 22.

Plaintiff contends that "Dr. Nicoski's opinion should have been afforded greater weight than Dr. Turner's assessment absent some independent basis supporting the difference in conclusions." Dkt. 14 at 11. Specifically, plaintiff asserts that the ALJ erred by giving greater

REPORT AND RECOMMENDATION - 13

weight to the opinions of the examining and reviewing physicians than plaintiff's treating physician, because the state agency consultants reviewed the same records as Dr. Nicoski but reached a different conclusion. *Id.* (citing *Orn*, 495 F.3d at 632).

As discussed above, the ALJ provided specific and legitimate reasons for rejecting the opinion of Dr. Nicoski's opinion in this case. Thus, the ALJ did not err by affording the opinions of Dr. Turner and Dr. Thuline "significant weight" because they were consistent with the medical record. The ALJ did not err.

      B.      <u>The ALJ Did Not Err in Evaluating Plaintiff's Credibility</u>

           *1.*      *Standard for Evaluating Credibility*

As noted above, credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; SSR 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general

findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

          2.     *The ALJ Did Not Err in Making an Adverse Credibility Determination*

The ALJ found that although plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." AR at 20-21. With respect to plaintiff's liver disease, the ALJ observed that "[w]hile the claimant does have liver disease, his condition was related to alcohol use and treatment records reflect well-compensated cirrhosis with alcohol cessation . . . He has not required further treatment for liver disease. The claimant's allegations of debilitating fatigue are not credible in light of his well compensated cirrhosis with normal liver function studies." AR at 21.

With respect to plaintiff's allegations that he suffers from persistent diarrhea, the ALJ noted that "in April 2008 the claimant reported a [one to two] year history of loose bowel movements with 2 to 3 bowel movements per day . . . Weight was stable without any weight loss. At a follow-up visit he reported that discontinuing dairy products resolved his diarrhea. Although he denied that ceasing dairy products resolved his symptoms in his testimony, he has not required any medication or other treatment for diarrhea." AR at 21. Thus, the ALJ found that "the diarrhea symptoms he reported in April 2008 are of far less frequency than he alleged in his testimony and he has not experienced any weight loss. His allegations of loose stools

occurring 12 times a day are not credible. His history of intermittent diarrhea, occurring approximately once a day according to the medical record, does not preclude light exertion activities." AR at 22.

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for finding plaintiff less than credible. Dkt. 14 at 12. Specifically, plaintiff asserts that the ALJ should not have relied upon "treatment notes by Mehdi Ferdows, M.D., show[ing] that Plaintiff had experienced two to three bowel movements each day but that the symptoms had resolved when Plaintiff stopped using dairy. Plaintiff may have experienced a temporary lessening of diarrhea, as he reported to Dr. Ferdows, but his symptoms returned." Dkt. 14 at 13. In addition, plaintiff argues that although the "reporting of the frequency of his diarrhea has varied in the record but was still consistent with his testimony. In March 2004, Plaintiff was reporting 10-12 bowel movements a day . . . In February 2008, Plaintiff reported two to three bowel movements per day over the past one to two years . . . These reports are within the ranges that Plaintiff testified to and contradict the ALJ's characterization of Plaintiff's diarrhea as intermittent." *Id.* With respect to the ALJ's finding that plaintiff's complaints of fatigue were not credible because his cirrhosis was well-compensated and his liver studies were normal, plaintiff contends that plaintiff's cirrhosis was only one possible explanation for his fatigue. *Id.* at 14. For example, his medications and cervical spine impairment may also have impacted his ability to sleep. *Id.* at 15.

The Commissioner responds that the ALJ offered clear and convincing reasons for questioning plaintiff's allegations, and because the ALJ's credibility determination was supported by substantial evidence it should be sustained. Dkt. 17 at 8. Specifically, the Commissioner points out that "although the ALJ did not find Plaintiff's complaints of debilitating fatigue entirely credible in light of his well compensated cirrhosis, the ALJ did

REPORT AND RECOMMENDATION - 16

1 consider Plaintiff's fatigue when limiting him to light work," as demonstrated by the ALJ's finding that plaintiff could only lift 20 pounds occasionally and 10 pounds frequently "in light of the claimant's degenerative disc disease and liver disease." *Id.* (citing AR at 21). With respect to plaintiff's claims of chronic diarrhea, the Commissioner asserts that plaintiff simply offers a competing interpretation of the evidence. *Id*. at 10. Finally, the Commissioner contends that the ALJ did not reject plaintiff's complaints of neck pain from plaintiff's degenerative disc disease, but incorporated those complaints into the RFC assessment by limiting plaintiff to light work. *Id.*

Contrary to plaintiff's assertions, the ALJ provided several clear and convincing reasons, supported by substantial evidence in the record, for finding plaintiff's allegations less than credible. As plaintiff concedes, plaintiff's reporting of the frequency of his diarrhea has varied widely in the record. Based on plaintiff's inconsistent reports to physicians, as well as the fact that he has not lost weight or received any further treatment for his diarrhea, the ALJ could reasonably find plaintiff's testimony that he is currently experiencing diarrhea 10-12 times per day less than credible. Moreover, plaintiff's assertion that there may have been other causes of plaintiff's fatigue besides his cirrhosis is insufficient to demonstrate that the ALJ erred. AR at 21. During the hearing, plaintiff testified that his neck problem had recently become a problem again, but his liver condition secondary to alcohol use was his most disabling medical condition. AR at 34. Specifically, he testified that "the primary problem after I was released from the hospital was fatigue . . . I sleep two and a half, three hours every day in bed, I try to get up but I can't walk." AR at 33-35.

As noted at the outset, credibility determinations are particularly within the province of the ALJ. Here, the ALJ carefully considered the evidence, and supported his decision with a

detailed examination of the record and several clear and convincing reasons for finding plaintiff less than credible. The ALJ's adverse credibility determination must be affirmed.

## VIII. CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's decision be AFFIRMED, and this matter be DISMISSED with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 18th day of November, 2011.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge